IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

SAMUEL WILLIAM SCHAFER,

Plaintiff,                                    OPINION AND ORDER

v.
                                                          11-cv-624-wmc

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

Defendant.

Plaintiff Samuel William Schafer seeks judicial review of a decision by the Commissioner of the Social Security Administration denying his application for Social Security Disability Insurance Benefits and Supplemental Security Income.   Schafer principally contends that the administrative law judge: (1) failed to follow the treating physician rule; (2) failed to properly evaluate his testimony; and (3) relied upon tainted vocational expert evidence.   For the reasons set forth below, the case will be remanded to the Commissioner for rehearing.

FACTS

A.      Plaintiff's Work History, Injury and Application for Benefits

Samuel Schafer is a 37-year-old high school graduate.   (AR 200, 239.)   From 1991 through October 7, 2006, he worked as a service technician.   On the later date, Schafer was involved in a motorcycle accident that resulted in an amputation of his left leg below the knee, and surgery to rebuild his left elbow.   (AR 235-37.)   As a result, Schafer was hospitalized at Froedtert Memorial Luther Hospital from October 7 to October 28, 2006.   He was seen then as an outpatient there and at Watertown Memorial

Hospital at various times from November 2006 through May 29, 2007 for counseling and medication, physical therapy and pain management.   (AR 237.)

On May 21, 2007, Schafer filed an application for disability insurance and an application for supplemental security income alleging an onset date of October 7, 2006. Both claims were initially denied on August 7, 2007 and again upon reconsideration on November 26, 2007.   (AR 117.)   Thereafter, Schafer requested a hearing before an administrative law judge ("ALJ").

### B.   The ALJ's Disability Decision

On March 11, 2010, Schafer appeared before ALJ Patrick Toal and testified that he has issues with "fitment of his prosthesis," and is working with Dr. Ferrell to address them.   (AR 38-39, 50-51, 58-59.)   He explained that these issues affected his gait and led to tightness in the muscles of his back.   (AR 71.)   He also reported problems with grooming, specifically with buttons and tying shoes, and problems shopping alone, but denied having any mental health issues.   (AR 43, 55-57.)

On April 9, 2010, the ALJ issued a written decision finding that Schafer was not disabled applying the sequential, five-step analysis required by the statute.   (AR 114-132.)   At step one, the ALJ found Schafer met the disability insured status requirements through December 31, 2010, and had not engaged in substantial gainful activity since his alleged onset date of disability, October 7, 2006.   At step two, he found that Schafer had the severe physical impairments of a fractured left upper limb, traumatic below the knee amputation to his left lower limb, which requires the use of a prosthesis,

phantom limb pain, and chronic back pain.  (AR 119.)    At step three, the ALJ found that Schafer did *not* have an impairment or combination of impairments that met or medically equaled any presumptively disabling impairment listed in the governing regulations.   (AR 120) (citing 20 C.F.R. § 404, Subpart P, Appendix 1).

After completing step three, the ALJ paused to determine Schafer's residual functional capacity ("RFC").  More specifically, the ALJ determined the level of work activities that Schafer could perform on a sustained basis despite the limitations posed by his impairments in light of the medical records, reports from consulting physicians and Schafer's testimony at the hearing.  The ALJ found that Schafer retained the residual functional capacity to perform sedentary work with the following limitations:   (1) unable to lift/carry more than 10 pounds; (2) unable to stand/walk more than two hours; (3) must have the opportunity to change sit/stand at will; (4) unable to climb ladders, ropes, scaffolds; (5) unable to climb stairs, kneel, stoop or crouch more than occasionally; and (6) unable to perform fine manipulation more than frequently.   (AR 122.)

At step four, the ALJ accepted the vocational expert's testimony that Schafer was unable to perform his past work as a service technician or maintenance worker, but that there were jobs in significant numbers in the national economy that he could perform. (AR 131-32.)   The Appeals Council affirmed the ALJ's decision on July 14, 2011.[1]   (AR 1.) Schafer then filed a timely complaint for judicial review in this court pursuant to 42 U.S.C. §405(g).

---

[1] The Appeals Council's affirmance of the ALJ's decision constitutes the final decision of the Commissioner of Social Security.   *Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008).

OPINION

A federal court reviews an administrative disability determination with deference and will uphold a denial of benefits unless the ALJ's decision is not supported by substantial evidence or is based on an error of law.   42 U.S.C. § 405(g); *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).   Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).   A reviewing court cannot reconsider facts, re-weigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the ALJ.   *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

Here, Schafer principally contends that the ALJ: (1) failed to follow the treating physician rule; (2) failed to properly evaluate his testimony; and (3) relied upon tainted vocational expert testimony.   Each argument is addressed below.

## I.        Treating Physician Rule

The Seventh Circuit has repeatedly addressed the appropriate standards that the Commissioner must follow when weighing the opinions from treating physicians, most recently in *Jelinek v. Astrue*, 662 F.3d 805 (7th Cir. 2011).   Generally, a treating physician's opinion that is "consistent with the record is generally entitled to controlling weight . . . an ALJ who chooses to reject a treating physician's opinion must provide a sound explanation" for doing so. *Id.*, at 811 citing 20 C.F.R. § 404.1527(d)(2); *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010); *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010); *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir .2007).   Moreover, "[i]f an ALJ does

not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the (1) length, nature, and extent of the treatment relationship, (2) frequency of examination, (3) the physician's specialty, (4) the types of tests performed, and (5) the consistency and supportability of the physician's opinion." *Scott v. Astrue*, 647 F.3d 734, (7th Cir. 2011); *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009); 20 C.F.R. § 404.1527(d)(2).

In his decision, the ALJ discounted portions of the opinion of Dr. Wendland, one of Schaffer's treating physicians. Specifically, the ALJ found "no support [for Dr. Wendland's opinion] that the claimant is limited to sitting and/or standing a total of only one hour each in an eight-hour workday." (AR 127.) The ALJ declined to afford Dr. Wendland's opinion controlling weight because it was inconsistent with Schafer's own statement that he "sits/walks/stands alternating positions" during a typical day (albeit at home, alternating positions every 10-15 minutes). (*Id.*) Schafer argues that this fails to provide a sound explanation for rejecting his treating physician's opinion. The court is inclined to agree.

The relevant inquiry is not what a claimant reports doing in his daily activities at home in short, unstructured intervals, but rather what he could perform in full-time, sustained work on a regular basis, 8 hours a day, 40 hours a week. *See* SSR 96-8p (stating that an "RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis ").[2]

---

[2]  *See also Scandura v. Astrue*, No. 07 cv 5098, 2009 WL 648611 *9 (E.D.N.Y. March 10, 2009) (ALJ erred by failing to recognize the physician assessed plaintiff's work capacity in the context of a five day work week and instead assumed the capacity would leave the claimant bed-bound); Geiger v. Astrue,

Here, Dr. Wendland's sit/stand limitation was set in the context of "competitive five day work environment on a sustained basis" (AR 645, 663), while Schafer's statement involved alternating between sitting and standing during a typical day at home.   Schafer's statement and Dr. Wendland's opinion are thus grounded in starkly different contexts. Nothing in the ALJ's decision accounts for this distinction, making remand necessary.[3] *See* SSR 96-8p

Schaffer also challenges the ALJ's rejection of both treating physicians' opinions because they were provided at the request of Schafer's counsel.   Faulting a treating physician's informed opinion merely because it was provided at the request of claimant's counsel is suspect at best, unless there were evidence that it was inconsistent with the physician's actual view or past treatment or otherwise deserving of criticism.   Indeed, as the Seventh Circuit has explained, it is incumbent on a claimant to solicit and provide them.

> The claimant bears the burden of submitting medical evidence establishing her impairments and her residual functional capacity. 20 C.F.R. §§ 404.1512(a), (c), 404.1513(a), (b), 404.1545(a)(3). How else can she carry this burden other than by asking her doctor to weigh in? **Yet rather than forcing the ALJ to wade through a morass of medical records, why not ask the doctor to lay out in plain language exactly what it is that the claimant's condition prevents her from doing? Indeed the regulations endorse this focused inquiry.** See id. § 404.1513(b)(6) (requesting

No. 10cv5765-BHS-JRC, 2011 WL 5282712 *11 (W.D.Wash. Oct. 5, 2011) (ALJ's failure to consider fact that the treating doctor assessed Plaintiff's RFC in the context of capacity to function in a competitive work environment using the exact same language in the questionnaires in this case was error and did not show a conflict with testimony of claimant).

[3] Schafer also contends that the ALJ also rejected similar opinions from the later treating physician Dr. Nottestad.   As such, the court's reasoning applies just as much to Dr. Wendland as it does to Dr. Nottestad.

from claimant "a medical source statement about what you
can still do despite your impairment(s)"); id. § 404.1545(a)(3)
("We will consider any statements about what you can still do
that have been provided by medical sources...."); see also id.
(permitting claimant to submit "descriptions and
observations" about her functional limitations from "family,
neighbors, friends, or other persons"). And in the "Best
Practices" section of its website, the Social Security
Administration recognizes the value of this approach by
urging claimants and their representatives to submit a doctor's
statement that explicitly "identifies the limitations imposed
by the claimant's impairments." (emphasis added)

*Punzio v. Astrue*, 630 F.3d 704, 712-713 (7th Cir. 2011).   Given that a claimant is *encouraged* to

seek out medical evidence to discharge his burden of proof under the sequential

evaluation process, "the mere fact that a medical report is provided at the request of

counsel  ...  is not a legitimate basis for evaluating the reliability of the report."  *Moss v.*

*Astrue*, 555 F.3d 556 (7th Cir. 2009).

Finally, it is worth noting that the ALJ failed to address meaningfully any of the

factors laid out in 20 C.F.R. § 404.1527(d)(2)-(6) and § 416.927(d)(2)-(6).   In

particular, those factors are not addressed by the ALJ in apportioning weight to the

treating physicians' opinions -- providing further cause for remand.   This failure is more

glaring when, at least on first blush, they would seem to favor Schafer's claim of disability.

 *See Scott* 647 F.3d 734 (stating that "[i]f an ALJ does not give a treating physician's

opinion controlling weight, the regulations require the ALJ to consider the length, nature,

and extent of the treatment relationship, frequency of examination, the physician's

specialty, the types of tests performed, and the consistency and supportability of the

physician's opinion").   The court will, however, leave that analysis to the ALJ in the first

instance on remand.

## II.     Vocational Expert Testimony

Schafer next contends that the ALJ erred with respect to the hypothetical questions posed to the vocational expert because they did not reasonably reflect Schafer's physical limitations.    This error derives from the same deficient RFC determination discussed above.    More specifically, the limitations omitted from the RFC finding -- for example, Dr. Wendland's sit/stand limitations -- are similarly omitted from the ALJ's hypothetical questions to the vocational expert.    *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002) ("hypothetical questions posed to [VE's] ordinarily must include all limitations supported by medical evidence in the record").

Based on existing case-law, the court finds that these defects tainted the opinions of the vocational expert as well, further warranting remand.[4]   *See Steele*, 290 F.3d at 942 (when posing his hypothetical to the VE, the ALJ was required to include all of a claimant's limitations "to ensure that the vocational expert [did] not refer to jobs that the claimant cannot work"); *O'Connor–Spinner v. Astrue,* 627 F.3d 614, 619 (7th Cir. 2010) ("Among the limitations the VE must consider are deficiencies of concentration, persistence and pace"); *see also Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991)

---

[4] Of course, on remand, the ALJ may decide to again reject the treating physicians' sit-stand limitations.  He must do so, however, based on *sound* reasoning and amend the deficiencies identified in this opinion.  The ALJ must also ensure that questions to the vocational expert conform with the medical evidence, including providing an evidentiary basis for departing from the opinions of the treating physicians.  *See Eakin v. Astrue*, 432 Fed.Appx. 607 (7th Cir. 2011) (ALJs are required to base their residual functional capacity on some evidence in the record); *Suide v. Astrue*, 371 Fed.Appx. 684 (7th Cir. 2010) (when the ALJ rejects opinions from the treating physicians it leaves an "evidentiary

(stating that "testimony elicited by hypothetical questions that do not relate with precision to all of a claimant's impairments cannot constitute substantial evidence to support the [Commissioner's] decision.")

### III.     Schafer's Credibility

Schafer's final challenge is directed towards the ALJ's credibility findings.   To determine the credibility of the claimant, the ALJ must follow a two-step process when evaluating pain and other subjective testimony: (1) the ALJ must determine whether the pain alleged is supported by objective medical evidence that could reasonably produce such pain or other symptoms; and (2) the ALJ must evaluate the credibility of the claimant's subjective statements as to the intensity, persistence, and functionally limiting effects.   *See* SSR 96-7p.

Here, because objective medical evidence has been improperly rejected and requires further consideration by the ALJ, the court will decline to address this challenge in full. The more prudent course is to direct the ALJ to reconsider Schafer's credibility on remand after his treating physicians' evidence has been properly accounted for.   *Pierce v. Colvin*, 739 F.3d 1046, 1051 (2014); *see Mollett v. Astrue*, No. 3:11–CV–238 2012 WL 3916548, at *9-10 (N.D. Indiana Sept. 7, 2012).

## ORDER

IT IS ORDERED that the decision of defendant Carolyn Colvin, Acting Commissioner of Social Security, is REVERSED and the case is REMANDED to the

---

deficit" that the ALJ may *not* fill with his own lay opinion of the RFC).

commissioner under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.   The clerk of court is directed to enter judgment for plaintiff and close this case.

Entered this 23rd day of June, 2014.

BY THE COURT:

/s/

WILLIAM M. CONLEY
District Judge